UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JAMES R. PRUTSMAN,

    Plaintiff,

    v.

RUST CONSULTING, INC., et al.,

    Defendants.
_____/

No. C 12-6448 PJH

**ORDER GRANTING MOTION TO REMAND**

    Before the court are defendants' motion to dismiss or stay, plaintiff's motion to remand, and defendants' motion for jurisdictional discovery. The motions came on for hearing on March 20, 2013. Plaintiff James Prutsman ("plaintiff") appeared through his counsel, Robin Workman. Defendants Rust Consulting, Inc. and SourceHOV Holdings, Inc. ("defendants") appeared through their counsel, Maria Ellinikos. Having read the papers filed in conjunction with the motion and carefully considered the arguments and the relevant legal authority, and good cause appearing, the court hereby rules as follows.

    Because plaintiff's motion to remand raises the threshold issue of whether this court has subject matter jurisdiction over this action, the court addresses that motion first. Plaintiff filed this suit in San Francisco County Superior Court on November 20, 2012, asserting two causes of action under state law. On December 20, 2012, defendants removed the action to this court on the basis of diversity jurisdiction. In the notice of removal, defendants noted that federal courts have original jurisdiction over suits between citizens of different states where there is more than $75,000 in controversy, and flatly stated that "[b]oth criteria are satisfied here." Dkt. 1 at 3. Plaintiff now concedes that there is complete diversity between the parties, but still disputes that defendants have met their burden to show, by a preponderance of the evidence, that the amount in controversy

exceeds $75,000.  See Mahoney v. DePuy Orthopaedics, Inc., 2007 WL 3341389, at *3-4 (E.D. Cal. Nov. 8, 2007) (amount in controversy "may be met from the viewpoint of either the plaintiff or the defendant," but must be established by a preponderance of the evidence).

In their notice of removal, defendants relied solely on plaintiff's former salary to establish that the amount in controversy in this current suit is met.  Specifically, they claimed that the amount in controversy was "likely comparable to the compensation package Rust offered plaintiff in 2009, which included an annual base salary well into the six figure range and bonus opportunities." Id.  Notably, defendants conceded that "plaintiff does not allege the compensation he receives from his new employer," even as they explained that the amount of controversy in this case is properly measured by "the value of the right sought to be gained by plaintiff." Id.  In essence, defendants seek to have the court assume that, because plaintiff was offered over $75,000 in compensation from his former employer in 2009, it is more likely than not that plaintiff is currently making over $75,000 from his new employer.  The court declines to so speculate.  If defendants had instead presented evidence that plaintiff's current salary was over $75,000, that would likely be sufficient to establish that the amount in controversy was met.  However, they present no such evidence.  Instead, they rely solely on evidence of a past salary offer, without anything more.  While defendants are correct that evidence of former salary may be relevant to determining the amount of plaintiff's current salary, they point to no authority showing that evidence of a plaintiff's former salary, standing alone, is enough to establish the amount in controversy in a declaratory judgment suit, where the amount in controversy is measured by the value of the object of the litigation.  Hunt v. Washington State Apple Advertising Com'n, 432 U.S. 333, 347 (1977).

In Mahoney, the defendant provided evidence of its own lost revenue, totaling over $6 million. Id. at *5.  While the court acknowledged that the precise amount of lost profits had not been established, it found it "unlikely that [defendant's] profit on those revenues would be equal to or less than $75,000 in light of the approximately $3.9 million and $2.4

million sales revenue generated by [plaintiff]." Id. In other cases cited by defendants, the court examined evidence from both the plaintiff's and the defendant's viewpoint before ultimately determining that it was more likely than not that the amount in controversy was met. See Hartstein v. Rembrandt IP Solutions, LLC, 2012 WL 3075084 (N.D. Cal. July 30, 2012); Davis v. Advanced Care Technologies, Inc., 2007 WL 1302736 (E.D. Cal. May 2, 2007).

In this case, defendants have provided no evidence regarding the amount in controversy from their own viewpoint. And they have not provided any evidence regarding plaintiff's salary at his current place of employment. As a result, the court finds it unduly speculative to conclude that defendants have met their burden to show, by a preponderance of the evidence, that the amount in controversy from plaintiff's perspective is more than $75,000. While defendants now seek jurisdictional discovery in order to uncover evidence regarding plaintiff's current salary, the court notes that defendants made no effort to obtain that discovery before removing this case to federal court. Instead, defendants put the cart before the horse, choosing to remove the case first, and then seek discovery as to the basis for removal jurisdiction afterwards. Equally puzzling is the defendants' decision not to provide any evidence regarding their own lost profits or revenue that resulted from plaintiff's cessation of employment, especially since that information is completely within the defendants' own custody and control. For these reasons, the court GRANTS plaintiff's motion to remand and DENIES defendants' motion for leave to conduct jurisdictional discovery. Defendants' motion to seal exhibit 2 of the Potter declaration is GRANTED, as it contains plaintiff's confidential salary information.

Because the court finds that it does not have subject matter jurisdiction to hear this case in the first place, it does not reach the merits of defendants' motion to dismiss or stay. However, one issue raised at the hearing merits some attention, even if in dicta. During the briefing on defendants' motion, plaintiff argued that he was not bound to the forum selection clause in the stockholder agreement, because he never actually executed that agreement, and because the stock option agreement (which he did execute) incorporated only certain

portions of the stockholder agreement, not including the forum selection clause. The court was inclined to agree with plaintiff's position, but after the parties had finished briefing the motion, defendants introduced a new agreement (the "adoption agreement"), which was executed by plaintiff, and which did purport to incorporate by reference the entire stockholder agreement, including the forum selection clause. Because the adoption agreement was presented to the court via supplemental brief, the parties did not have the opportunity to submit briefing as to whether the adoption agreement did indeed establish that plaintiff was bound to the stockholder agreement's forum selection clause. Thus, the parties presented their arguments at the hearing. Defendants took the position that the adoption agreement unambiguously incorporated the entire stockholder agreement, thereby binding plaintiff to the forum selection clause. Plaintiff argued that the adoption agreement did not take effect unless plaintiff actually acquired shares of common stock, which he did not do. Thus, plaintiff's position was that the adoption agreement, though signed by plaintiff, had no legal effect. The court finds defendants' arguments far more convincing here. The agreement starts by stating that it "<u>is executed</u> pursuant to the terms of the stockholder agreement . . . by the undersigned" (i.e., plaintiff). <u>See</u> Dkt. 42, Ex. 1 at 7 (emphasis added). The key paragraph of the agreement then reads as follows:

> The Undersigned (i) agrees that the Common Shares acquired by the Undersigned, and certain other Common Shares that may be acquired by the Undersigned in the future, shall be bound by and subject to the terms of the Stockholder Agreement, pursuant to the terms thereof, and (ii) hereby adopts the Stockholder Agreement with the same force and effect as if he were originally a party thereto.

<u>Id.</u> While plaintiff may be correct that subsection (i) of this paragraph does not take effect unless common shares are actually acquired, the plain meaning of the agreement makes clear that subsection (ii) takes effect immediately, whether or not plaintiff acquires any common shares. The effect of separating the two subsections is to make them severable, such that subsection (i) is contingent on the acquisition of common shares, but subsection (ii) is not. Again, while the court ultimately DENIES defendants' motion to dismiss or stay as moot (in light of the remand order), the arguments at the hearing indicated that

4

defendants have the better position on this issue.  The parties' requests for judicial notice are similarly DENIED as moot.  The case is REMANDED to the Superior Court for the City and County of San Francisco.

**IT IS SO ORDERED.**

Dated: March 25, 2013

PHYLLIS J. HAMILTON
United States District Judge